D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HARRY GASTON,

                Plaintiff,

        -against-                                  MEMORANDUM & ORDER

                                                17-CV-1252 (NGG) (CLP)

P.O. RUIZ, P.O. JOHN DOE, P.O. JANE DOE,
and the CITY OF NEW YORK,

                Defendants.
------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

        Plaintiff Harry Gaston brings this action under 42 U.S.C. § 1983 against Defendants the City of New York (the "City") and three individual police officers (the "Individual Defendants"). (Compl. (Dkt. 1).) Plaintiff asserts two counts of false arrest against the Individual Defendants and one claim of municipal liability against the City. (Id. ¶¶ 12-73.) Before the court is Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Notice of Mot. to Dismiss (Dkt. 15-1); see Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 15).) For the reasons that follow, the court GRANTS Defendants' motion to dismiss.

I.    BACKGROUND

    A.    Facts

        The following facts are drawn from Plaintiff's complaint and are assumed to be true for purposes of the motion to dismiss.

        At approximately 2:30 A.M. on December 11, 2015, Plaintiff, who was then living at a homeless shelter located at 8 East Third Street in Manhattan, was arrested at the shelter by Officer "Jane Doe." (Compl. ¶¶ 13-14.) Officer Jane Doe told Plaintiff that he was in violation of a bench warrant issued by the Queens Criminal Court on March 27, 1992 (the "Bench

1

Warrant"). (Id. ¶ 15.) Officer Jane Doe, along with other officers who are not party to this case, then transported Plaintiff to the Queens Criminal Court. (Id. ¶ 16.) When Plaintiff's case was called, an assistant district attorney "informed the court that the warrant on which [P]laintiff had been arrested was not for him, but, rather, was for another person." (Id. ¶ 17.) Plaintiff was released from custody at approximately 1:00 P.M. that day, about eleven hours after his arrest. (Id. ¶¶ 18-19.) Before leaving the courthouse, a clerk of the court provided Plaintiff with a signed document (the "Criminal Court Letter") stating, "Please be advised that the Court has determined that the bearer of this letter, Gaston, Harry is not the defendant arrested under docket 92Q000805." (Id. ¶¶ 20-21; Dec. 11, 2015, Letter from Queens Crim. Ct. ("Dec. 11, 2015, Letter") (Dkt. 1-3).)

Approximately one year later, on or about November 17, 2016, at approximately 12:30 A.M., Plaintiff was again arrested. (Compl. ¶ 27.) Plaintiff had attempted to use his MetroCard to enter the subway at Jamaica Center; when his card did not work, he used the emergency exit to access the system, whereupon Officer "John Doe" stopped Plaintiff and asked for his identification. (Id. ¶¶ 27-31.) After Plaintiff produced his identification, Officer John Doe said that he would not arrest Plaintiff if no outstanding warrant for his arrest came up on the computer. (Id. ¶¶ 32-33.) Officer John Doe did, however, find on his computer that there was an outstanding bench warrant for Plaintiff. (Id. ¶ 34.) Officer John Doe called over Officer Ruiz, who was also present in the subway station, to inform him of what he found on the computer. (Id. ¶ 35.) Plaintiff told both officers that he had a document in his possession attesting to the fact that the warrant had not been issued for him. (Id. ¶ 36.) Officer John Doe allegedly said that he was not interested in seeing the document, and proceeded to place Plaintiff under arrest. (Id. ¶¶ 37-38.) As Officer John Doe was placing Plaintiff in handcuffs, he told him that he

2

"should have taken care of the warrant since its issuance in 1992," to which Plaintiff responded that he had. (Id. ¶¶ 39-40.) Still at the subway station, Officer John Doe saw on the computer that Plaintiff had "been arrested on three prior occasions for failing to comply with the aforementioned warrant." (Id. ¶ 41.) Plaintiff told the officers to look in his wallet, where they found and read the Criminal Court Letter. (Id. ¶¶ 42-43.) Nevertheless, Officer John Doe allegedly told Plaintiff to "tell it to the judge" and refused to release him. (Id. ¶ 44.) The officers transported Plaintiff to "the stationhouse of District 20, from where [P]laintiff was later transported to Queens Central Booking." (Id. ¶ 46.) On November 18, 2016, Plaintiff appeared before a Queens County Criminal Court judge who, "realizing that [Plaintiff] was not the subject of the warrant on which he had now been arrested for the fourth time, dismissed the warrant." (Id. ¶ 47.) Plaintiff also pleaded guilty to one charge of disorderly conduct. (Certificate of Disposition (Dkt. 15-7); see Pl. Mem. of Law in Opp'n to Mot ("Pl. Opp'n") (Dkt. 16) at ECF p.4.) Plaintiff attests that, by the time of his release, he had been in custody for approximately thirty-nine hours. (Compl. ¶ 49.) According to information in the New York City Police Department's (the "NYPD") Online Prisoner Arraignment Lookup (the "OLPA"), however, Plaintiff only spent 12 hours and 22 minutes in custody following the November 17, 2016, arrest. (See OLPA Report (Dkt. 15-6).)

### B. Procedural History

Plaintiff commenced this action on March 6, 2017. (Compl.) In the complaint, he alleges that the Individual Defendants violated his constitutional right to be free from false arrest on December 11, 2015, and November 17, 2016. (Id. ¶¶ 23-24, 50-51). In addition, he brings a claim of municipal liability against the City, claiming that the NYPD's alleged failure to use the New York State Unified Court System's Criminal Record Information and Management System

3

("CRIMS") to check for outstanding warrants, and the NYPD's reliance on outdated information, taken together, constitute a policy, practice, and custom of the City that violated Plaintiff's right to be arrested only with probable cause. (Id. ¶¶ 54-73.)

Defendants now move for the dismissal of the complaint on all counts. (Mem.) First, they state that Plaintiff's claims are barred by the probable cause that existed for both arrests. (Id. at 5-8.) Second, they state that Plaintiff's claims stemming from his November 17, 2015, arrest are barred by his subsequent guilty plea for disorderly conduct. (Id. at 9-10.) Third, they contend that the Individual Defendants are, in any event, entitled to qualified immunity. (Id. at 10-13.) Finally, they argue that Plaintiff has failed to properly state a claim for municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). (Mem. at 13-16.)

## II. LEGAL STANDARDS

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

When considering a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as

4

documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

## III. DISCUSSION

### A. Consideration of Extrinsic Documents

When considering a Rule 12(b)(6) motion to dismiss, the court may consider only limited materials, including "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The court may also consider documents that are "integral" to the complaint, in that the complaint "relies heavily upon [their] terms and effect," so long as these documents are undisputedly authentic and accurate. Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). Additionally, the court may consider "public records of which the court could take judicial notice." Mangiafico, 471 F.3d at 398; see Smart v. Goord, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) ("When ruling on a motion to dismiss, the Court may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint."). "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." Friedl v. City of New York, 210 F.3d 79, 83 (2d Cir. 2000) (alteration adopted) (quotation marks omitted).

If, on a motion to dismiss, the court must "rely on the extrinsic materials, the proper course is to convert the motion to a motion for summary judgment . . . , after providing notice to

the parties and an opportunity to be heard." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 231 (2d Cir. 2016).

Plaintiff argues that the court should deny Defendants' motion to dismiss as "improperly brought" because the motion includes extrinsic material that "goes well beyond the four corners of [Plaintiff's] complaint." (Pl. Opp'n at ECF p.4; see id. at ECF pp.2-4.) In particular, Plaintiff objects to Defendants' use of "a partially redacted copy of what purports to be a bench warrant for [P]laintiff, a [NYPD] OLPA Report, a certificate of disposition, and, most egregiously, the entire transcript of [P]laintiff's testimony at a hearing held pursuant to General Municipal Law §50-h." (Id. at 3.)

First, the court takes judicial notice of the Bench Warrant, the OLPA Report, and the certificate of disposition. It is well established that these documents are matters of public record and, as such, the court may consider them on a motion to dismiss. See, e.g., Bryant v. Rourke, No. 15-CV-5564 (SJF) (GRB), 2017 WL 1318545, at *3 (Feb. 8, 2017) (report and recommendation); Harris v. Nassau County, No. 13-CV-4728 (NGG), 2016 WL 3023265, at *3-4 (E.D.N.Y. May 24, 2016); Smith v. City of New York, No. 12-CV-4572 (KPF), 2013 WL 6158485, at *1 (S.D.N.Y. Nov. 25, 2013); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) ("[Courts] may also look to public records . . . in deciding a motion to dismiss.").

By contrast, the court declines to consider the transcript of Plaintiff's 50-h hearing testimony on the instant motion to dismiss. Unlike arrest warrants and other police documents, 50-h hearings are not matters of public record. See Bissinger v. City of New York, No. 06-CV-2325 (WHP), 2007 WL 2826756, at *2 n.1 (S.D.N.Y. Sept. 24, 2007). The court may thus only consider the transcript if the complaint "relies heavily upon its terms and effect." See Difolco,

622 F.3d at 111. Courts routinely consider 50-h transcripts at the motion-to-dismiss stage where "both parties have relied upon these extrinsic materials in their submissions." See, e.g., Harley v. City of New York, No. 14-CV-5452 (PKC), 2016 WL 552477, at *3 (E.D.N.Y. Feb. 10, 2016); Dellate v. Great Neck Union Free Sch. Dist., No. 09-CV-2567 (AKT), 2010 WL 3924863, at *4 (E.D.N.Y. Sept. 30, 2010), aff'd, 448 F. App'x 164 (2d Cir. 2012). Here, however, the text of Plaintiff's complaint contains no mention of the 50-h transcript and there is no reason to believe that Plaintiff relied on the transcript in filing the complaint. See Weaver v. City of New York, No. 13-CV-20 (CBA), 2014 WL 950041, at *4 (E.D.N.Y. Mar. 11, 2014); see also id. at *4 (collecting cases). The court will therefore not consider Plaintiff's 50-h testimony in deciding this motion.

The court rejects Plaintiff's contention that Defendants' use of the 50-h transcript requires the court to deny the motion to dismiss. (See Pl. Opp'n at ECF p.4.) When faced with extrinsic documents improperly submitted by a party, the court may either convert the motion to dismiss to one for summary judgment or simply decline to consider the extrinsic documents. See Friedl, 210 F.3d at 83. Here, the court chooses to proceed without considering Plaintiff's 50-h testimony; outright denial of the motion to dismiss would be inappropriate.

### B. Plaintiff's False Arrest Claims

To prevail on a claim for false arrest, a plaintiff must plead that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (quoting Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action

7

is brought under state law or under § 1983." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. (emphasis omitted) (quoting Weyant, 101 F.3d at 852). "The inquiry is limited to 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" Id. (quoting Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) (Sotomayor, J.)).

"[W]hen an arrest is made pursuant to a facially valid warrant, there is a presumption that it was made with probable cause." Justice v. Kuhnapfel, 985 F. Supp. 2d 334, 339 (E.D.N.Y. 2013) (quotation marks omitted). Additionally, conviction on the offense for which an arrest was made is conclusive evidence of probable cause, as long as that conviction survives appeal. Weyant, 101 F.3d at 852; see also Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986) (stating that § 1983 incorporates the common-law rule that a false-arrest plaintiff "can under no circumstances recover if he was convicted of the offense for which he was arrested"). Because an arrest on multiple charges is "still only one arrest, i.e., one intrusion into plaintiff's liberty," John v. Lewis, No. 15-CV-5346 (PKC), 2017 WL 1208428, at *12 (E.D.N.Y. 2017), a conviction on any of the charges for which the arrest was made will preclude a claim of false arrest. See Jaegly, 439 F.3d at 154.

After separately examining Plaintiff's claims against the Individual Defendants, the court finds that there was probable cause for both arrests. Accordingly, the court dismisses Plaintiff's claims against all Individual Defendants.

8

### 1. The December 11, 2015, Arrest

Plaintiff claims that there could be no probable cause for his arrest because he was not the intended subject of the Bench Warrant, a fact proven by the Criminal Court Letter. (Pl. Opp'n at ECF p.4.) Defendants, meanwhile, assert probable cause on the grounds that, "where there is a facially valid [b]ench [w]arrant, there is probable cause for an arrest even if the officers are mistaken as to the identity of the intended subject of the warrant, so long as the mistake was reasonable." (Defs. Reply in Supp. of Mot. ("Reply") (Dkt. 17) at 2; see Mem. at 5-7.)

"[A] mistaken identity can provide the basis for probable cause." Martinez v. City of New York, 340 F. App'x 700, 701 (2d Cir. 2009) (summary order) (citing Hill v. California, 401 U.S. 797, 802-03 (1971)). An arrest based on mistaken identification is still constitutionally valid if there was "probable cause to arrest the person sought and the arresting officer reasonably believed that the arrestee was that person." Id.; see also Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) ("'Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution.'" (alteration in original) (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001))).

Defendants are correct that there was probable cause for Plaintiff's arrest on December 11, 2015. First, there is no doubt that there was probable cause to arrest the person sought in the Bench Warrant. Issuance of a valid bench warrant against a suspect establishes probable cause to arrest that person. See United States v. Miller, 265 F. App'x 5, 7 (2d Cir. 2008) (summary order); see also Pittman v. City of New York, No. 14-CV-4140 (ARR), 2014 WL 7399308, at *3 (E.D.N.Y. Dec. 30, 2014) (collecting cases). The question, then, is whether it was reasonable for Officer Jane Doe to believe that Plaintiff was the person sought in the Bench Warrant. The court

finds that it was. Even accepting Plaintiff's contention that the Bench Warrant was not for him but for another individual, Plaintiff's appearance is sufficiently similar to that of the subject of the Bench Warrant that Officer Jane Doe's alleged mistake was clearly reasonable. As seen by comparing the Bench Warrant and the OLPA Report, both photographs look strikingly similar and the two subjects share a name. Any minor discrepancies cannot upset a finding of probable cause on this ground. See Martinez, 340 F. App'x at 701-02. Even without relying on the information obtained from the 50-h hearing, the court has no trouble concluding that it was reasonable for Officer Jane Doe to believe that the Bench Warrant applied to Plaintiff. The fact that Plaintiff received the Criminal Court Letter subsequent to his arrest does not alter the court's conclusion because the analysis of probable cause in this situation turns on what Officer Jane Doe reasonably believed at the time of the arrest. See Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007); see also Pittman, 2014 WL 7399308, at *3 ("Reliance on commonly used electronic databases is generally reasonable and sufficient to establish probable cause.").

### 2. The November 17, 2016, Arrest

In his second cause of action, Plaintiff alleges that his arrest on November 17, 2016, was unconstitutional because he would not have been taken into custody but for the indication by the NYPD computer that there was an outstanding bench warrant for his arrest. Plaintiff was not, however, arrested solely because of the warrant; rather, he was arrested and charged with theft of services in connection with his turnstile jumping. (See OLPA Report.) Plaintiff concedes that his arrest "for a trespass in the subway" is sufficient to defeat his claim for false arrest. (Pl. Opp'n at ECF p.4.)

The court agrees: Because the officers had probable cause to believe that Plaintiff was committing theft of services at the time of arrest, his false arrest claim cannot proceed. See

10

Zellner, 494 F.3d at 369 ("[A]n arrest is not unlawful so long as the officer has . . . probable cause to believe that the person arrested has committed any crime." (emphasis added)); see also Ackerson v. City of White Plains, 702 F.3d 15, 20 (2d Cir. 2012) ("Whether probable cause existed for the charge actually invoked by the arresting officer at the time of the arrest is irrelevant." (quotation marks omitted)). Additionally, Plaintiff's eventual guilty plea to disorderly conduct "provides sufficient evidence that probable cause existed at the time of arrest and precludes a false arrest claim." Soliman v. City of New York, No. 15-CV-5310 (PKC), 2017 WL 1229730, at *14 (E.D.N.Y. Mar. 31, 2017) (alterations adopted) (quotation marks omitted); see Weyant, 101 F.3d at 852.

3. Municipal Liability

"[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. Instead, municipalities are only liable under § 1983 for constitutional deprivations resulting from a governmental policy or custom. Id. at 694; see Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1951 (2018) ("[I]n a § 1983 case[,] a city or other local governmental entity cannot be subject to liability at all unless the harm was caused in the implementation of 'official municipal policy.'" (quoting Monell, 436 U.S. at 691)). A plaintiff may demonstrate that such a policy or custom exists by introducing evidence of one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policy makers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

11

Skates v. Incorporated Village of Freeport, 265 F. Supp. 3d 222, 235 (E.D.N.Y. 2017). A "single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). A plaintiff bringing a Monell claim also must establish a causal connection between the municipality's official policy and the underlying constitutional violation. See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Plaintiff claims that the City should be held liable for its alleged "fail[ure] and refus[al] to update its computers to reflect the status of warrants in the New York State court system," including its alleged refusal to use CRIMS, a warrant database maintained by the New York State Unified Court System. (Pl. Opp'n at ECF p.5; see Compl. ¶¶ 54-55, 61.) Plaintiff further claims that, if the NYPD's warrant database were updated to be compatible with CRIMS, he would not have been arrested on either December 11, 2015, or November 17, 2016. (Pl. Opp'n at ECF pp.5, 7.) In response, Defendants state that Plaintiff's Monell claim must fail without an underlying constitutional violation; and, even if the court were to find an underlying constitutional injury, that Plaintiff has not made out the required elements under Monell. (See Mem. at 14-16.)

Defendants are correct that Plaintiff's claim fails for lack of any alleged constitutional injury. Here, as discussed above, Plaintiff alleges two instances of false arrest. Because the court today finds that neither of these arrests was constitutionally problematic, these incidents cannot support Plaintiff's Monell claim. See, e.g., Schultz v. Incorporated Village of Bellport, 479 F. App'x 358, 360 (2d Cir. 2012) (summary order) ("Because [the plaintiff] was unable to establish an underlying violation of his constitutional rights . . . , his . . . Monell claim necessarily fail[s] as well." (footnote omitted)).

The court also finds that, even if Plaintiff did have a viable false-arrest claim, he has not pleaded facts sufficient to establish a municipal policy leading to any constitutional injury. Plaintiff's complaint does not mention any incidents other than the two arrests discussed above, something that would ordinarily defeat his assertion of municipal liability. See Calicchio v. Sachem Cent. Sch. Dist., 185 F. Supp. 3d 303, 316-17 (E.D.N.Y. 2016). In his opposition brief, however, he cites to two cases that he claims demonstrate a municipal policy or custom. (See Pl. Opp'n at ECF pp.6-7.) While a plaintiff may sometimes overcome a motion to dismiss a Monell claim by citing to complaints in other cases that contain similar allegations, see Osterhoudt v. City of New York, No. 10-CV-3173 (RJD), 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012), Defendants are ultimately correct that Plaintiff's reliance on the two cited cases is "unavailing because both cases are factually dissimilar from [P]laintiff's case" (Reply at 8). Both Gonzalez v. New York City, No. 16-CV-254 (CM), 2016 WL 7188147 (E.D.N.Y. Dec. 2, 2016), and Maragh v. City of New York, No. 11-CV-1748 (JBW), 2012 WL 1745349 (E.D.N.Y. May 16, 2012), concerned allegations that the City "has a practice and policy of unlawfully detaining individuals on account of warrants that have been previously dismissed and vacated." See Gonzalez, 2016 WL 7188147, at *2; Maragh, 2012 WL 1744349, at *1-2. As the City points out, "[P]laintiff is not claiming that the subject Bench Warrant was vacated, or that it should have been vacated, prior to either of his arrests."[1] (Reply at 8; see Compl.) Thus, since Plaintiff's citations to other cases do not support his allegations of a municipal policy or custom, he needed instead to put forth additional examples of the complained-of conduct. Because he did

---

[1] The court notes that Plaintiff's brief in opposition raises, for the first time, the claim that he was arrested pursuant to a "vacated" warrant. (See Pl. Opp'n at ECF p.7.) Because "it is axiomatic that the [c]omplaint cannot be amended by the briefs in opposition to dismiss," O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989), the court restricts its view of Plaintiff's claims to the allegations in his complaint.

not, his claim of Monell liability would not succeed, even if he had been falsely arrested on December 11, 2015, and November 17, 2016.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss (Dkt. 15). The court respectfully DIRECTS the Clerk of Court to close the case.

SO ORDERED.

Dated: Brooklyn, New York
July 3, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge